UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

SAMUEL D. CORIALE, CHARLES WELLERS,
GWENDOLYN COMBS, ARTHUR
WOHLABAUGH, VINCENT CILENTO,
MICHAEL WALKER, EDWARD RUNGE,
DAVID FERREN, ERIC KULLBERG,
MELVIN KAHLER, BERNARD HENNING,
individually and on behalf of
all others similarly situated,

                              Plaintiffs,

v.                                                        Civil Action No.

XEROX CORPORATION, ANNE M. MULCAHY,
URSULA M. BURNS, PETER DOWD,
LAWRENCE BECKER, PATRICIA M. NAZEMETZ,
XEROX RETIREE FLEX HEALTH CARE PLAN,
a/k/a XEROX CORPORATION RETIREE FLEX PLAN,
XEROX RETIREE HEALTH CARE PLAN, and
XEROX MEDICAL CARE PLAN FOR RETIRED
EMPLOYEES,

                              Defendants.

───────────────────────────────

# <u>COMPLAINT</u>

Plaintiffs, Samuel D. Coriale, Charles Wellers, Gwendolyn Combs,

Arthur Wohlabaugh, Vincent Cilento, Michael Walker, Edward Runge, David Ferren,

Eric Kullberg, Melvin Kahler, and Bernard Henning, by their attorneys, Rupp, Baase,

Pfalzgraf, Cunningham & Coppola LLC, for their complaint against defendants Xerox

Corporation, Anne M. Mulcahy, Ursula M. Burns, Peter Dowd, Lawrence Becker,

Patricia M. Nazemetz, Xerox Retiree Flex Health Care Plan a/k/a Xerox Corporation

Retiree Flex Plan, Xerox Retiree Health Care Plan, and Xerox Medical Care Plan for

Retired Employees ("defendants"), allege upon information and belief as follows:

## INTRODUCTION

1.    This is a class action lawsuit under the Employee Retirement

Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq*., seeking

a declaration enjoining defendants from taking any additional steps to reduce and/or

terminate all or substantially all of the retiree health care benefits provided to Xerox

Corporation ("Xerox") retirees under Xerox's employee welfare benefit plan, together

with damages in an amount sufficient to compensate plaintiffs for the loss of health care

benefits already put into place by defendants.

## JURSIDICTION AND VENUE

2.    This Court has jurisdiction over this action pursuant to ERISA,

29 U.S.C. § 1132(a)(1) and (3), (e)-(f), the Declaratory Judgment Act, 28 U.S.C.

§§ 2201-02, and the general federal question jurisdiction statute, 28 U.S.C. § 1331.

3.    This lawsuit is the result of defendants' wrongful reduction and/or

termination of retiree health care benefits previously provided to plaintiffs.

4.      Prior to filing this action, in accordance with the requirements of the benefit plan, plaintiffs demanded that defendants rescind their decision to terminate all or substantially all retiree health care benefits for certain Xerox retirees.  Defendants unequivocally have refused to rescind their decision.

5.      By virtue of defendants' refusal to rescind their decision, plaintiffs have exhausted any and all administrative remedies available to them under Xerox's employee welfare benefit plan and ERISA, to the extent that such remedies are available.

6.      Any additional attempts to exhaust administrative remedies would be futile, as the reduction and/or termination of retiree health care benefits were planned and executed at the highest executive levels of defendant Xerox, such that the plan administrator cannot provide any of the remedies sought by plaintiffs.  Xerox also has made it clear that it has no intention of rescinding its decision to reduce and/or terminate all or substantially all of retiree health care benefits it currently provides to retirees.

7.      Venue in this Court is proper under 29 U.S.C. § 1132(e), as defendants are corporate citizens of the State of New York, County of Monroe.  In addition, all of the plan documents designate the Federal District Court in Monroe County, New York as the only court in which plaintiffs may enforce their legal rights under Xerox's employee welfare benefit plan with regard to ERISA.

8.      Plaintiffs hereby request a jury trial in this matter.

## PARTIES

### Plaintiffs

9.      Plaintiffs are former salaried and non-union wage employees of Xerox, and all persons similarly situated, who began their employment with Xerox on or before January 1, 1989 and who, at the time of their retirement, together with their eligible spouses and/or dependents, were eligible to receive medical and other health care coverage benefits under a Xerox retiree health care plan.

10.     Plaintiff Samuel D. Coriale resides at 1242 Conifer Cove Lane, Webster, New York.  He was employed by Xerox for thirty-five years, from 1963 until 1998 in various new product development assignments and as Product Business Team Manager.  Upon Mr. Coriale's retirement from Xerox, he became eligible for lifetime retiree health care benefits, as assured to him during his tenure with Xerox.  In January of 2010, when Xerox's decision to eliminate certain retiree health care benefit allowances takes effect, Mr. Coriale's vested benefits will be reduced and/or eliminated, in violation of the ERISA welfare benefit plans Mr. Coriale participated in by virtue of his employment with Xerox.  Mr. Coriale is a member of the class and will represent the class adequately.

11.     Plaintiff Charles Wellers resides at 1010 High Vista Trail, Webster, New York.  He was employed by Xerox for twenty-six years, from 1967 until 1993.  Upon Mr. Wellers' retirement from Xerox, he became eligible for lifetime retiree health care benefits, as guaranteed to him during his tenure with Xerox.  Mr. Wellers' vested benefits have been, and upon information and belief, will continue to be, reduced and/or eliminated, in violation of the ERISA welfare benefit plans Mr. Wellers participated in by virtue of his employment with Xerox.  Mr. Wellers is a member of the class and will represent the class adequately.

12.     Plaintiff Gwendolyn Combs resides at 898 Ridge Road, Lot 24, Webster, New York.  She was employed by Xerox for thirty-seven years, from 1953 until 1999, in various product development positions.  Upon Ms. Combs' retirement from Xerox, she became eligible for lifetime retiree health care benefits, as pledged to her during her tenure with Xerox.  Ms. Combs' vested benefits have been, and upon information belief, will continue to be, reduced and/or eliminated, in violation of the ERISA welfare benefit plans Ms. Combs participated in by virtue of her employment with Xerox.  Ms. Combs is a member of the class and will represent the class adequately.

13.     Plaintiff Arthur Wohlabaugh resides at 6131 Southbrook Drive, Ontario, New York.  He was employed by Xerox for thirty-three years, from 1967 until 2001, in various roles including quality consulting in the high volume business unit. Upon Mr. Wohlabaugh's retirement from Xerox, he became eligible for lifetime retiree

health care benefits, as pledged to him during his tenure with Xerox.  In January of 2010,

when Xerox's decision to eliminate certain retiree health care benefit allowances takes

effect, Mr. Wohlabaugh's vested benefits will be reduced and/or eliminated, in violation

of the ERISA welfare benefit plans Mr. Wohlabaugh participated in by virtue of his

employment with Xerox.  Mr. Wohlabaugh is a member of the class and will represent

the class adequately.


14.     Plaintiff Vincent Cilento resides at 120 Ledgerock Lane,

Rochester, New York.  He was employed by Xerox for thirty-three years, from 1966 until

2000, as a Project Manager in the supplies organization.  Upon Mr. Cilento's retirement

from Xerox, he became eligible for lifetime retiree health care benefits, as pledged to him

during his tenure with Xerox.  In January of 2010, when Xerox's decision to eliminate

certain retiree health care benefit allowances takes effect, Mr. Cilento's vested benefits

will be reduced and/or eliminated, in violation of the ERISA welfare benefit plans

Mr. Cilento participated in by virtue of his employment with Xerox.  Mr. Cilento is a

member of the class and will represent the class adequately.


15.     Plaintiff Michael Walker resides at 409 North Point Road,

Apartment 704, Osprey, Florida.  He was employed by Xerox for thirty-three years, from

1967 until 2001, in the areas of materials research and product development, including

International postings and as Manager of Supplies Multinational Manufacturing.  Upon

Mr. Walker's retirement from Xerox, he became eligible for lifetime retiree health care

benefits, as pledged to him during his tenure with Xerox.  In January of 2010, when Xerox's decision to eliminate certain retiree health care benefit allowances takes effect, Mr. Walkers' vested benefits will be reduced and/or eliminated, in violation of the ERISA welfare benefit plans Mr. Walker participated in by virtue of his employment with Xerox.  Mr. Walker is a member of the class and will represent the class adequately.

16.     Plaintiff Edward Runge resides at 77 Chicken Street, Wilton, Connecticut.  He was employed by Xerox for thirty years, from 1969 until 1999, in various human resources positions including Manager of Management Resources.  Upon Mr. Runge's retirement from Xerox, he became eligible for lifetime retiree health care benefits, as pledged to him during his tenure with Xerox.  In January of 2010, when Xerox's decision to eliminate certain retiree health care benefit allowances takes effect, Mr. Runge's vested benefits will be reduced and/or eliminated, in violation of the ERISA welfare benefit plans Mr. Runge participated in by virtue of his employment with Xerox. Mr. Runge is a member of the class and will represent the class adequately.

17.     Plaintiff David Ferren resides at 10 Granite Drive, Penfield, New York.  He was employed by Xerox for thirty-seven years, from 1966 until 2002, in various International postings within the supplies organizations, including OKC Site Manager, where he was responsible for activities to competitively produce and distribute Xerox supply products.  Upon Mr. Ferren's retirement from Xerox, he became eligible for lifetime retiree health care benefits, as pledged to him during his tenure with Xerox.

In January of 2010, when Xerox's decision to eliminate certain retiree health care benefit allowances takes effect, Mr. Ferren's vested benefits will be reduced and/or eliminated, in violation of the ERISA welfare benefit plans Mr. Ferren participated in by virtue of his employment with Xerox.  Mr. Ferren is a member of the class and will represent the class adequately.

18.    Plaintiff Eric Kullberg resides at 120 Bay Village Drive, Rochester, New York.  He was employed by Xerox for twenty-eight years, from 1966 until 2001, in various positions throughout the company including Manager of Digital Solutions and Support Center/OSG.  Upon Mr. Kullberg's retirement from Xerox, he became eligible for lifetime retiree health care benefits, as pledged to him during his tenure with Xerox.  In January of 2010, when Xerox's decision to eliminate certain retiree health care benefit allowances takes effect, Mr. Kullberg's vested benefits will be reduced and/or eliminated, in violation of the ERISA welfare benefit plans Mr. Kullberg participated in by virtue of his employment with Xerox.  Mr. Kullberg is a member of the class and will represent the class adequately.

19.    Plaintiff Melvin Kahler resides at 22 Lockwood Drive, Pittsford, New York.  He was employed by Xerox for thirty-seven years, from 1962 until 1999, in research and development and financial analysis positions, including as the Manager of Financial Planning and Analysis.  Upon Mr. Kahler's retirement from Xerox, he became eligible for lifetime retiree health care benefits, as pledged to him during his tenure with

Xerox.  In January of 2010, when Xerox's decision to eliminate certain retiree health care benefit allowances takes effect, Mr. Kahler's vested benefits will be reduced and/or eliminated, in violation of the ERISA welfare benefit plans Mr. Kahler participated in by virtue of his employment with Xerox.  Mr. Kahler is a member of the class and will represent the class adequately.

20.     Plaintiff Bernard Henning resides at 3885 Orchard Street, Walworth, New York.  He was employed by Xerox for 30 years, from 1971 until 2001.  Upon Mr. Henning's retirement from Xerox, he became eligible for lifetime retiree health care benefits, as pledged to him during his tenure with Xerox.  Mr. Henning's vested benefits have been and, upon information and belief, will continue to be, reduced and/or eliminated, in violation of the ERISA welfare benefit plans Mr. Henning participated in by virtue of his employment with Xerox.  Mr. Henning is a member of the class and will represent the class adequately.

**<u>Defendants</u>**

21.     The Xerox Retiree Flex Health Care Plan, also known as the Xerox Corporation Retiree Flex Plan ("Flex"), the Xerox Retiree Health Care Plan ("HCP"), and the Xerox Medical Care Plan for Retired Employees ("CPRE") (collectively the "Plans") are employee welfare benefit plans within the meaning of ERISA.  The Plans were established and maintained for the purpose of providing retiree health and medical

benefits for participants and their beneficiaries, including plaintiffs and the members of the class.

22.     Defendant Xerox Corporation is a New York corporation with its headquarters in Norwalk, Connecticut.

23.     Defendant Anne M. Mulcahy is sued herein in her capacity as the Chairman of Xerox Corporation, and as the former Chief Executive Officer of Xerox Corporation.

24.     Defendant Ursula M. Burns is sued herein in her capacity as the current Chief Executive Officer and Director of Xerox Corporation.

25.     Defendant Peter Dowd is sued herein in his capacity as the current plan administrator of the Plans.

26.     Defendant Lawrence Becker is sued herein in his capacity as the former administrator of the Plans.

27.     Defendant Patricia M. Nazemetz is sued herein in her capacity as a Vice President and the Chief Human Resources and Ethics Officer of Xerox Corporation.

28.     Defendants Mulcahy, Burns, Dowd, Becker, and Nazemetz are named fiduciaries and/or are fiduciaries by virtue of their positions with Xerox with respect to the Plans within the meaning of ERISA.

## CLASS ALLEGATIONS

29.     Plaintiffs bring this action on their own behalf and on behalf of a class ("Class") of all persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The proposed Class is defined as:

> All persons who are former salaried employees of Xerox and were (a) hired on or before January 1, 1989; (b) promised lifetime health care benefits at no cost by Xerox; (c) receiving medical and other health care benefits at no cost under one or more of the Plans ("Xerox Benefits"); and (d) whose Xerox Benefits have been, or will be, reduced and/or terminated by defendants.  The class also includes any spouses, surviving spouses and/or dependents of such former salaried employees of Xerox whose Xerox Benefits have been, or will be, reduced and/or terminated by defendants.

30.     The proposed members of the Class ("Members") are so numerous that joinder of all persons is impracticable.  The exact number of Members currently is unknown to plaintiffs, but readily can be obtained through appropriate discovery.  Upon information and belief, however, there are more than 30,000 Members.

31.     There are common questions of law or fact that exist as to all Members, including, but not limited to whether: (1) Xerox's common representations to the Members, either made in writing or orally, constituted guaranteed lifetime benefits; (2) Xerox's reduction, termination, and/or planned reduction or termination of those benefits constituted a violation of the terms of the Plans; (3) Xerox's reduction, termination, and/or planned reduction or termination of those benefits constituted a violation of ERISA; (4) these violations of ERISA and/or terms of the Plans entitles the Class to a court order enjoining defendants from implementing any additional changes to the Plans that would result in a termination and/or further reduction of benefits; and (5) the Members who already have been harmed by defendants' reduction and/or termination of benefits under the Plans are entitled to damages in an amount sufficient to compensate them for their losses.

32.     As set forth above, the proposed representative plaintiffs are Samuel D. Coriale, Charles Wellers, Gwendolyn Combs, Arthur Wohlabaugh, Vincent Cilento, Michael Walker, Edward Runge, David Ferren, Eric Kullberg, Melvin Kahler, and Bernard Henning. Each of these plaintiffs is a Member and possesses claims that are typical of the claims of the individual Members of the Class. These plaintiffs have retained able and experienced legal counsel to review their claims and to assert this lawsuit on their behalf and on behalf of the Class as a whole. These plaintiffs likewise will fairly and adequately represent and protect the interests of the Members,

and have no interests that are adverse or antagonistic to the interests of the Class as a whole.

33.     This action is sustainable as a class action under Rule 23(b)(1) of the Local Rules of Civil Procedure because varying adjudications with respect to the individual Members would establish inconsistent standards of conduct for defendants. Adjudications with respect to the individual Members would substantially impair or impede the individual Members' ability to protect their interests.

34.     This action also is sustainable as a class action under Local Rule 23(b)(2) because defendants have acted and/or refused to act on grounds generally applicable to the Class, thereby making preliminary and/or final injunctive relief and other equitable relief, on a class-wide basis, appropriate.

35.     Alternatively, this action is maintainable as a class action under Local Rule 23(b)(3) because questions of law or fact common to the Members predominate over any questions affecting only individual plaintiffs.  Moreover, a class action is superior to any other alternative method for the fair and efficient adjudication of this controversy.  This Court is an appropriate forum in which to concentrate all litigation relating to the subject retiree benefits.

36.     Plaintiffs are not aware of any impediments that would prevent them from pursuing the claims alleged herein as a class action.  In the alternative, however, plaintiffs plead their claims individually.

## FACTUAL BACKGROUND

37.     Upon information and belief, the Xerox was founded as The Haloid Company in 1906, and changed its name to the Xerox in 1961.  Xerox is one of the largest document management technology companies in the world.

38.     Upon information and belief, Xerox consistently has provided its employees with various benefits, including pension, health, and other retirement benefits.

39.     These benefits are, and have been, governed by an ERISA employee welfare benefit plan and an ERISA pension plan created by Xerox for the purpose of providing benefits to its current and retired employees.

40.     Pursuant to ERISA, an employee welfare benefit plan is any program established or maintained for the purpose of providing plan participants with medical benefits.  Xerox established an employee welfare benefit plan for the purpose of providing medical benefits to its retired employees.

41.     Although ERISA provides statutory vesting provisions for pension plans, it does not provide similar vesting provisions for employee welfare benefits plans. Employee welfare benefit plans, therefore, do not vest unless an employer makes a contractual pledge to its employees to do so.  By agreeing to vest an employee welfare benefit plan, an employer limits its right to modify or terminate its employee welfare benefits plan at will.

42.     Upon information and belief, in an effort to remain competitive in its industry and to attract high quality employees, Xerox represented to its employees that its employee benefits were among the best offered in the country.  Xerox promoted its employee health care benefits, including those available in retirement, as a means of attracting and retaining high quality employees, including plaintiffs.

43.     Joseph C. Wilson, one of the early presidents of Xerox, made an affirmative guarantee to all employees that they would be taken care of both as active employees and in retirement from the company.  In fact, in a letter distributed to all employees, Wilson vowed, on behalf of Xerox, to relieve Xerox employees from the stresses of retirement, including fear of poverty in old age, or in death, or in ill health.

44.     Xerox continued Wilson's assurance and, as part of its benefits package, vowed to provide its employees with lifetime retiree health care benefits upon

their retirement.  In so contracting, Xerox limited its right to terminate its employee

welfare benefits plan.


45.     Upon information and belief, the Members began employment

with Xerox based on Xerox's guarantee of lifetime retiree health care benefits.  Upon

further information and belief, the pledge of lifetime retiree health care benefits

motivated the Members to continue their employment with Xerox until retirement rather

than pursuing other employment for higher compensation.


46.     Throughout their careers with Xerox, the Members accepted lower

levels of monetary compensation because Xerox provided annual communications to its

employees regarding the value of its retirement benefits program.  The Members were

assured that Xerox would provide them with lifetime retiree health care benefits, which

created an expectation of certain financial security in their retirement.


47.     All Members fulfilled their employment obligations with Xerox

and, upon their retirement, were eligible to participate in the Plans.  Eligibility was

determined by Xerox's Plan Documents (as defined below) and the contractual

obligations undertaken by Xerox when the Members began their employment with

Xerox.

48.    Upon information and belief, when each of the Members commenced employment with Xerox, their employment was subject to the plan documents then in effect, including the summary plan description and explanatory pamphlets distributed by Xerox (collectively, the "Plan Documents"), the terms of which are incorporated by reference herein.

49.    Upon further information and belief, Xerox made numerous other oral and written guarantees to the Members, which confirmed that they would receive lifetime health care benefits upon their retirement from Xerox.

50.    Specifically, Xerox annually distributed Value Added Statements to the Members, which are incorporated herein by reference.  These statements constitute supplemental plan documents, and explained that the benefits each Member received under the Xerox employee welfare benefits plan and the Xerox pension plan were part of the compensation that Xerox provided to the Members.  These statements likewise reiterated Xerox's guarantee that it would provide the Members with lifetime health care benefits.

51.    When various Members retired from Xerox, they attended retirement counseling seminars conducted by Xerox.  At those seminars, Xerox distributed retiree benefit pamphlets that contained information regarding the retirees' right to receive lifetime health care benefits.  In addition to these writings, Xerox also

made representations that the soon-to-be-retirees were entitled to receive, and would in fact receive, lifetime retiree health care benefits.

52.     Xerox uniformly guaranteed all of the Members that, upon their retirement, they would be provided with lifetime health care benefits.  These assurances vested the Members' rights to lifetime health care benefits.

53.     Pursuant to one aspect of the Plans, Xerox provided the Members with a benefits allowance to be used to supplement health care coverage.  Xerox provided this benefit regardless of whether or not the Members obtained their retirement health insurance coverage through a Xerox-sponsored plan.

54.     Thus, if the Members elected to obtain retirement health insurance coverage from a source other than Xerox, Xerox still would honor its obligation to provide lifetime health care benefits by supplying those Members with the benefits allowance to supplement retirement health care costs (*i.e.*, co-pays, prescription coverage, etc.) pursuant to the Plans.  The amount of the benefits allowance for those Members who opted out of coverage was a set amount.

55.     On the other hand, those Members who elected to receive health care coverage from Xerox under the Plans also received a benefits allowance.  Their supplement allowance was based on a points system that took into account their age and

years of service with Xerox.  The benefits allowance was used to pay the cost of the

retirees' contribution or co-pay for their Xerox-sponsored health care coverage.

56.    The benefits allowance, whether received with coverage under the

Plans or not, was and is vital in assisting the Members (most of whom are on a fixed

retirement income) with retirement health care costs, including those costs not covered by

Medicare for Members who had achieved the age of 65.

57.    For those Members under the age of 65, Xerox would offer each

retiree access to its own health insurance plans, plus a benefits allowance to be used for

health-related costs such as co-pays, supplemental insurance premiums, or other qualified

expenses.  Once these Members achieved the age of 65, they would qualify for benefits

under Medicare and Xerox would provide an allowance to cover all health care costs that

Medicare would not.

58.    Xerox offered the Members under the age of 65 access to Xerox-

sponsored health insurance plans, or the ability to opt out of such coverage, but still

provided a benefits allowance that could be used for any qualified medical expense,

including premiums for external health insurance coverage, co-pays, or prescription

coverage.

59.     Prior to 2003, pursuant to one aspect of the Plans and for those Members age 65 and older, Xerox would provide either insurance coverage supplemental to the Medicare coverage that these retirees received, together with a reduced benefits allowance, or a full benefits allowance if the Member elected to opt out of this coverage.

60.     In or around 2003, for certain Members, Xerox reconfigured its benefits package for retirees age 65 and older, such that those Members could either accept a $500.00 limited benefits allowance and opt out of Xerox's coverage, or opt into Xerox's supplemental coverage with a larger benefits allowance, the proceeds of which would be used to pay for Xerox's premiums.

61.     With this policy change, the Members were provided with either a benefits allowance too small to cover external supplemental insurance premiums or, in the alternative, a much larger benefits allowance that was restricted to Xerox-sponsored insurance coverage.

62.     On September 29, 2008, Xerox announced that, effective January 1, 2009, it no longer would provide a benefits allowance to certain retirees who opted out of coverage under a Xerox health care plan.

63.     As of January 1, 2009, certain Members who previously had opted out of health insurance through a Xerox-sponsored plan no longer received any health care benefits from Xerox.

64.     Also on September 29, 2008, Xerox announced that, effective January 1, 2010, certain Members over the age of 65 no longer would receive a benefits allowance from Xerox.  Those retirees will instead be given access to alternative Xerox-sponsored supplemental coverage to be fully paid *by the retiree* at the Xerox group rate.  Thus, as of January 1, 2010, certain Members no longer will receive health care benefits from Xerox in any way, shape, or form.  Instead, they will be forced to expend their own money to receive the very same health care coverage Xerox previously had pledged to provide to them at no cost; an assurance those Members unfortunately relied on to their own detriment.

65.     Upon information and belief, Xerox also has eliminated the benefits allowance for those Members who have opted out of Xerox-sponsored coverage because they receive health insurance coverage under a Xerox-sponsored plan through a spouse.  These changes alter the Plans such that the Members will lose their contractual health care benefits in breach of their vested rights to lifetime health care benefits.

66.     The Members dedicated their careers to Xerox based on assurances made by Xerox that, upon their retirement, lifetime health care benefits would be

provided at no cost.  These repeated guarantees, both orally and in writing, vested

Xerox's obligation to provide such benefits.  Now that the Members' service to Xerox

has ended, Xerox has taken the unlawful, and unconscionable, step of reducing and/or

eliminating all or substantially all of the Members' retiree health care benefits.

### FIRST CAUSE OF ACTION
**(Declaratory Relief)**

67.     Plaintiffs repeat and reallege all of the foregoing allegations with

the same force and effect as if fully set forth herein.

68.     This claim is brought under 28 U.S.C. § 2201 and 29 U.S.C.

§ 1132 (a)(1)(B).  Section 1132(a)(1)(B) of Title 29 of the United States Code permits a

plan participant or beneficiary to (1) bring suit to restore and reinstate benefits due to him

or her under the terms of a plan; (2) enforce his or her rights under a plan; and/or

(3) clarify his or her right to future benefits under the terms of a plan.

69.     An actual controversy exists between the parties because plaintiffs

contend that defendants contracted to provide them with lifetime retiree health care

benefits upon their retirement and that defendants have breached that contractual

obligation.  Although plaintiffs have retired and have vested rights to lifetime retiree

health care benefits, defendants already have eliminated, or plan to eliminate, all or

substantially all of the plaintiffs' retiree health care benefits in contravention of plaintiffs'

vested rights to those benefits.

70.     Plaintiffs are entitled to declaratory relief in the form of an order:

(1) determining that plaintiffs are entitled to reinstatement and restoration of lifetime

retiree health care benefits at the level that existed on or before December 31, 2008;

(2) precluding defendants from eliminating or further reducing retiree health care benefits

below the level that existed on or before December 31, 2008; (3) awarding reasonable

attorneys' fees, expenses, and costs pursuant to 29 U.S.C. § 1132(g); and (4) granting

such other and further relief as the Court deems just and proper.

## SECOND CAUSE OF ACTION
### (Restoration of Benefits)

71.     Plaintiffs repeat and reallege the foregoing allegations with the

same force and effect as if fully set forth herein.

72.     Plaintiffs bring this cause of action under 29 U.S.C.

§ 1132(a)(1)(B), which, as noted above, permits a plan participant or beneficiary to bring

suit to restore and reinstate benefits due to him or her under the terms of a plan, to

enforce his or her rights under a plan, or to clarify his or her right to future benefits under

the terms of a plan.

73.    Upon retirement from Xerox, plaintiffs became entitled to vested and permanent subsidized retiree health care benefits, in accordance with the affirmative guarantees Xerox made to plaintiffs during their employment.

74.    Plaintiffs retired from Xerox and became eligible to receive the lifetime health care benefits guaranteed to them.

75.    Xerox has withheld and will continue to withhold certain benefits due to plaintiffs in contravention of these rights.

76.    Xerox violated plaintiffs' rights when it decided to withhold benefit allowances from those plaintiffs who opted out of Xerox-sponsored health insurance.

77.    Xerox will continue to violate plaintiffs' rights in January of 2010, when it withholds benefit allowances from certain retirees over the age of 65.  Xerox may not lawfully terminate all or substantially all of plaintiffs' health care benefits at anytime in the future because it is obligated to provide plaintiffs with lifetime health care benefits.

78.    Plaintiffs are entitled to relief in the form of an order: (1) reforming the Plans to remove all amendments that have functioned to reduce or terminate any benefits since December 31, 2008; (2) directing defendants to pay all past-

due benefits previously denied to plaintiffs; (3) awarding reasonable attorneys' fees, expenses, and costs, pursuant to 29 U.S.C. § 1132(g); and (4) for such other and further relief as the Court deems just and proper.

**THIRD CAUSE OF ACTION**
**(Breach of Fiduciary Duty)**

79.    Plaintiffs repeat and reallege the foregoing allegations with the same force and effect as if fully set forth herein.

80.    Section 1104 of Title 29 of the United States Code requires that fiduciaries discharge their duties with respect to the plans *solely* in the interest of plan participants and beneficiaries: (1) for the exclusive purpose of providing benefits to participants and their beneficiaries; (2) to defray reasonable expenses of administration; (3) with the care, skill, and diligence that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims; and (4) in accordance with the documents and instruments governing the plan.

81.    ERISA requires fiduciaries to comply with the common-law duty of loyalty.  This includes the obligation to deal fairly and honestly with employees and retirees, and to refrain from miscommunicating and misleading plan participants about material matters.  *See* 29 U.S.C. § 1104.

82.     The defendants have determined to reduce and/or eliminate benefits due to Members in violation of their fiduciary duties as set forth under ERISA.

83.     By engaging in the foregoing conduct and by their related acts and omissions, Xerox and the other defendant fiduciaries, as well as those acting on their behalf, breached their fiduciary duties to plaintiffs.

84.     As a direct and proximate result of defendants' breaches of their fiduciary duties, plaintiffs have been harmed.

85.     Section 1109(a) of Title 29 of the United States Code mandates that any person who is a fiduciary with respect to a Plan, who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries under ERISA, shall be personally liable to make good to such plan any losses resulting from each such breach, and shall be subject to such other equitable and remedial relief as the court may deem appropriate.

86.     Each of the fiduciaries named herein, including Mulcahy, Burns, Dowd, Becker, and Nazemetz, or are, at relevant times have been, fiduciaries under the Plans, either by virtue of their status as Xerox-named fiduciaries or by virtue of their functions within Xerox's corporate structure.

87.     Pursuant to 29 U.S.C. §§ 1132(a)(2) and (3) and 29 U.S.C.
§ 1104(a)(9), plaintiffs are entitled to relief in the form of an order:  (1) declaring that the
retiree health care benefits provided by defendants at the time of their retirement are
vested and permanent, and that any plan amendments functioning to reduce or terminate
any benefits are null and void; (2) requiring the defendant fiduciaries to immediately
reform the plans to remove all amendments that have functioned to reduce or terminate
any benefits; and (3) awarding reasonable attorneys' fees, expenses, and costs, pursuant
to 29 U.S.C. § 1132(g).

## FOURTH CAUSE OF ACTION
### (Injunctive Relief)

88.     Plaintiffs repeat and reallege the foregoing allegations with the
same force and effect as if fully set forth herein.

89.     Section 1132(a)(3) of Title 29 of the United States Code permits a
plan participant or beneficiary to bring suit to enjoin any act or practice that violates any
provision of ERISA or the terms of the plan.  Section 1132(a)(3) also allows a plan
participant or beneficiary to obtain appropriate equitable relief to address such violations
or to enforce any provisions of ERISA.

90.     Upon retirement from Xerox, plaintiffs became entitled to vested and permanent subsidized retiree health care benefits, in accordance with the affirmative guarantees Xerox made to plaintiffs during their employment.

91.     Plaintiffs retired from Xerox and became eligible to receive the lifetime health care benefits guaranteed to them.

92.     In contravention of these rights, Xerox has withheld and will continue to withhold benefits due to plaintiffs.

93.     Xerox violated plaintiffs' rights when it decided to withhold benefit allowances from those plaintiffs who opted out of Xerox-sponsored health care insurance coverage.

94.     Xerox further will violate plaintiffs' rights in January of 2010, when it withholds benefit allowances from certain retirees over the age of 65.  Xerox may not lawfully terminate all or substantially all of plaintiffs' health care benefits at anytime in the future because it is obligated to provide plaintiffs with lifetime health care benefits.

95.     As a result of defendants' acts and intentions, plaintiffs have sustained, and will continue to sustain, great and irreparable injury in the loss of their vested retirement health care benefits.

96.     Plaintiffs are without an adequate remedy at law because the exact amount of damages plaintiffs will sustain through the continued loss of such benefits is difficult to determine, and defendants' unequivocal refusal to refrain from implementing future changes to the Plans renders it impossible for plaintiffs to provide for their future health care needs.

97.     Plaintiffs are entitled to relief in the form of an order: (1) containing a preliminary and permanent injunction enjoining defendants from reforming the Plans to reduce or terminate any benefits due to the plaintiffs; (2) awarding reasonable attorneys' fees, expenses, and costs, pursuant to 29 U.S.C. § 1132(g); and (3) for such other and further relief as the Court deems just and proper.

**WHEREFORE**, plaintiffs respectfully request that the Court enter an order:

A.    Declaring that plaintiffs' retirement health care benefits offered by Xerox under the Plans are contractually vested;

B.    Reforming the Plans to remove all amendments that have functioned to reduce or terminate any benefits, and fashioning such other equitable relief against Xerox, the Plans, and/or the individual defendants as the Court deems just and proper;

C.    Directing defendants to pay all past due benefits previously denied to plaintiffs;

D.    Granting a preliminary and permanent injunction enjoining defendants from further reforming the Plans to reduce or terminate any benefits due and owing to plaintiffs;

E.    Awarding plaintiffs their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g); and

F.      Granting plaintiffs such other and further relief as the Court deems just and proper.

Date:   September 29, 2009
        Buffalo, New York

RUPP, BAASE, PFALZGRAF,
CUNNINGHAM & COPPOLA LLC
*Attorneys for the Plaintiffs*

By: /s/ David R. Pfalzgraf, Jr.
        David R. Pfalzgraf, Jr., Esq.
        Danielle E. Shainbrown, Esq.
1600 Liberty Building
Buffalo, New York 14202
716-854-3400
pfalzgraf@ruppbaase.com
shainbrown@ruppbaase.com

LAW OFFICE OF JAMES A. MARINO
*Attorney for Plaintiffs*

By: /s/ James A. Marino
        James A. Marino, Esq.
1 South Washington Street, Ste. 410
Rochester, New York 14614
518-697-1825
jmarino@rochester.rr.com