UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SAMUEL D. CORIALE,
CHARLES WELLERS,
GWENDOLYN COMBS,
ARTHUR WOHLABAUGH.
VINCENT CILENTO,
MICHAEL WALKER,
EDWARD RUNGE,
DAVID FERREN,
ERIC KULBERG,
MELVIN KAHLER,
BERNARD HENNING,
individually and on behalf of all others
similarly situated,

                              Plaintiffs,

                                                    DECISION AND ORDER

                                                    09-CV-6492L

              v.

XEROX CORPORATION,
LAWRENCE BECKER,

                              Defendants.
_____

       This action was commenced by eleven individual plaintiffs, who assert claims pursuant

to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*  The

amended complaint, filed in November 2009, names six defendants:  Xerox Corporation

("Xerox"); three retiree health care plans (collectively "plans"), including the Xerox Medical

Care Plan for Retired Employees ("Old Plan"), Xerox Retiree Health Care Plan ("New Plan"),

and the Xerox Retiree Flex Health Care Plan ("Flex Plan"); and two individuals, Lawrence

Becker and Patricia Nazemetz, who are identified respectively as the current administrator and a

past administrator of the plans.

       The plaintiffs are all former Xerox employees who retired between 1993 and 2003.  Each

plaintiff was a participant in one of the three plans.  They seek to bring this action on behalf of a

class of all former salaried Xerox employees who were:  (1) hired on or before January 1, 1989;

(2) "promised lifetime health care benefits" by Xerox at no cost to the employee; (3) receiving

medical or other health care benefits at no cost under any of the plans; (4) whose benefits have

been or will be reduced or terminated by defendants.  Dkt. #5 ¶ 26.  The proposed class also

includes those employees' and retirees' spouses and dependents.

Plaintiffs assert four claims under ERISA, all of which arise from Xerox's decision to

limit certain benefits under the Flex Plan, as explained in more detail below.  Defendants have

moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure.

## BACKGROUND

The following facts are taken from the complaint, or from documents cited by or

incorporated by reference in the complaint.[1]  The Old Plan provides health care benefits for

eligible employees who retired or who became eligible to retire prior to January 1, 1989.  The

New Plan provides health care benefits for eligible employees who became eligible to retire after

December 31, 1988, and who retired on or after January 1, 1989 and before January 1, 1995.

The Flex Plan provides health care benefits for eligible employees who became eligible to retire

after December 31, 1988 and who retired on or after January 1, 1995.  *See* Dkt. #11-5 at 23; Dkt.

#11-6 at 21, 22.

Each of these plans is an employee welfare benefit plan, *see* 29 U.S.C. § 1002(1).  Dkt.

#5 ¶ 21.  Plaintiffs concede in the complaint that as such, the plans "do not vest unless [the]

---

[1]For purposes of Rule 12(b)(6), the complaint is considered to include any documents incorporated in it by reference, annexed to it as an exhibit, or "integral" to it because it "'relies heavily upon its terms and effect.'"  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *International Audiotext Network, Inc. v. A.T. & T. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).  In the case at bar, that includes various plan documents, as well as certain letters from Xerox to plan participants, as set forth in the body of this Decision and Order.

employer makes a contractual pledge to its employees to do so."  *Id.* ¶ 38; *see Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72, 77 (2d Cir. 1996); *Harju v. Olson*, 709 F.Supp.2d 699, 729 (D.Minn. 2010).  Whether that ever occurred is one of the primary issues in this case.

Plaintiffs claim that going as far back as Joseph Wilson, "one of the early presidents of Xerox," Dkt. #5 ¶ 40, Xerox has promised and guaranteed its employees lifetime health care benefits, although the precise parameters of those promised benefits have not always been spelled out in detail. Plaintiffs relied on those promises in accepting employment with Xerox, and in remaining there over the years.  Plaintiffs accepted lower salaries than they otherwise would have, based in part on Xerox's assurances that they would have lifetime health care benefits.  *Id.* ¶ 43.

One of the features of the plans was a "benefits allowance" to supplement participants' health care coverage.  This benefit, which was provided whether the member got health insurance coverage through a Xerox-sponsored plan or from a source other than Xerox, provided a lump sum payment to help cover medical costs that were not covered by the retiree's other coverage, or to offset the cost of the member's contribution or copays for Xerox-sponsored health care coverage.  *Id.* ¶¶ 50-52.

In early 2003, Xerox announced certain changes to the Flex Plan.  Retirees age 65 or older could either opt out of Xerox-sponsored coverage and accept a $500 benefits allowance, or opt into a Xerox-sponsored plan with a larger benefits allowance, which would be used to pay for Xerox's premiums.  *Id.* ¶ 57; Dkt. #11-8.  Those changes did not affect the Old Plan or the New Plan.

More changes to the Flex Plan were forthcoming.  On September 29, 2008, Xerox sent a letter ("September 2008 letter") announcing certain changes to the Flex Plan that were to take effect on January 1, 2009.  The letter stated that effective that date, Xerox would no longer provide a benefits allowance under the Flex Plan for retirees who opted out of coverage under a

Xerox health care plan.  *Id.* ¶ 59.  Such members would be given the opportunity to opt back into the Xerox plan, however.  Dkt. #11-7 at 2.

Xerox also announced that, effective January 1, 2010, retirees over age 65 would no longer receive any benefits allowance from Xerox.  Instead, those retirees would be given access to Xerox-sponsored alternative coverage, to be fully paid for by the retiree at the Xerox group rate.  *Id.* ¶ 61; Dkt. #11-7 at 2.[2]

Based on these allegations, plaintiffs assert four causes of action.  The first seeks a declaratory judgment under 29 U.S.C. § 1132(a)(1)(B), declaring that plaintiffs are entitled to reinstatement of their health care benefits at the level that existed on or before December 31, 2008, and precluding defendants from eliminating or reducing those benefits in the future.  The second claim is also brought under § 1132(a)(1)(B), and seeks an order reforming all of the plans to remove all amendments that have functioned to reduce or terminate any benefits after December 31, 2008, and directing defendants to pay all past due benefits previously denied to plaintiffs.

The third count asserts a claim for breach of fiduciary duty under §§ 1132(a)(2) and (3) and 1104(a)(9), seeking an order granting essentially the same relief as the first two causes of action.  The fourth claim seeks an injunction under § 1132(a)(3), again for essentially the same relief.

---

[2]A copy of the September 2008 letter has been submitted by defendants. The letter is cited in the amended complaint.  Dkt. #5 ¶ 59.  It may thus be considered by the Court in deciding defendants' motion to dismiss.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Zembiec v. County of Monroe*, ___ F.Supp.2d ___, 2011 WL 703619, at *8 n.3 (W.D.N.Y. 2011).

**DISCUSSION**

**I. Standing**

In support of their motion, defendants argue that, as to the Old Plan and the New Plan, plaintiffs lack standing under Article III of the United States Constitution. Defendants state that there is no case or controversy as to those two plans, because the changes implemented by Xerox affect only the Flex Plan, not the Old or New plans.

Defendants also contend that plaintiffs lack statutory standing under ERISA. They state that nine of the eleven plaintiffs are participants in the Flex Plan, not in the Old or New Plans, and that those plaintiffs therefore lack standing to sue concerning the latter plans. As to the two plaintiffs who are participants in the Old and New plans–plaintiffs Wellers and Combs, respectively–defendants argue that they lack standing to sue as to the Flex Plan, since neither of them is a participant in that plan.

In response, plaintiffs respond that since each plaintiff is a participant in one of the three plans, each plaintiff has statutory standing. Regarding Article III standing, plaintiffs contend that each of them has standing because "Xerox has stated its intention to terminate and/or further reduce health care benefits to its employees, including the New Plan and Old Plan participants." Plaintiff's Mem. (Dkt. #17) at 14.

Plaintiffs do not, however, cite any evidence in the record that Xerox has ever expressly stated such an intention. They reference certain statements indicating that Xerox has reserved its rights to amend the plans, or to limit or terminate benefits under the plans, but no language explicitly stating a definite intent to do so.

I agree with defendants that none of the plaintiffs have standing to sue with respect to the Old or New plans. The September 2008 letter from Xerox to plan participants clearly relates only to the Flex Plan.

Pursuant to Article III of the United States Constitution, a district court's jurisdiction is limited to cases which present an "actual controversy" between the parties.  *Bausch & Lomb Inc. v. CIBA Corp.*, 39 F.Supp.2d 271, 272-273 (W.D.N.Y. 1999).  In order to demonstrate that an actual controversy exists to be decided, a plaintiff must demonstrate the presence of imminent injury, as well as legal standing to pursue damages for that injury when it occurs.

The Supreme Court has explained that the doctrine of standing, as embodied in Article III,

> requires federal courts to satisfy themselves that "the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal court jurisdiction." ... To seek injunctive relief, a plaintiff must show that he is under threat of suffering "injury in fact" that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.

*Summers v. Earth Island Inst.*, ___ U.S. ___, 129 S.Ct. 1142, 1148 (2009) (internal citations omitted) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).  *See also Connecticut v. Physicians Health Services Of Connecticut, Inc.*, 287 F.3d 110, 116 (2d Cir.) ("At an 'irreducible constitutional minimum,' Article III standing requires that the plaintiff 'have suffered an injury in fact–an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical'") (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)), *cert. denied*, 537 U.S. 878 (2002).

Whether viewed as a question of standing, or simply as a failure to state a claim, it is clear that the facts alleged in the complaint do not show any actions, or even threatened actions, by defendants with respect to the Old Plan or the New Plan.  The September 2008 letter refers only to the Flex Plan.  Although a "Frequently Asked Questions" sheet that accompanied that letter stated that "Xerox maintains its right to amend or terminate any of its benefit plans at any time," Dkt. #11-7 at 3, there are no allegations evidencing an actual intent by Xerox to do so with respect to the Old or New plans.

Plaintiff Samuel Coriale has also submitted a declaration in opposition to the motion to dismiss, in which he states that as a Xerox shareholder, he received a copy of a December 28, 2009 document concerning Xerox's proposed purchase of a controlling interest in Affiliated Computer Services, Inc.  In that document, Xerox stated that each of its health benefits plans "may be amended to reduce benefits or limit the liability of [Xerox] ... or terminated ... without material liability to [Xerox] ... ."  Dkt. #18 Ex. I.  Coriale also states in his declaration that in 2009, he was informed by Don Liu, General Counsel for Xerox, that Xerox had "no intention of amending or terminating either the Old Plan or the New Plan," but that Xerox "reserve[d] all of [its] legal rights with respect to all of [its] employee benefit plans."  Dkt. #18 ¶ 12 and Ex. H.

Beyond the fact that those materials are not set forth or referenced in the complaint, and thus do not bear upon the facial sufficiency of the complaint, *see In re Colonial Ltd. Partnership Litigation*, 854 F.Supp. 64, 79 (D.Conn. 1994) ("Allegations made outside of the complaint are not properly before the court on a motion to dismiss"), this evidence fails to show the existence of an actual controversy with respect to the Old Plan or the New Plan.  They indicate only that Xerox has taken the position that it has the *right* to amend or terminate the Old or New plans, even though Xerox has disavowed any present intention to exercise that right.

The standing requirement, like the related concept of ripeness, "bar[s] a plaintiff from asserting an injury that 'depend[s] on so many future events that a judicial opinion would be advice about remote contingencies.'"  *Rock Energy Co-op. v. Village of Rockton*, 614 F.3d 745, 748 (7th Cir. 2010) (quoting *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 538 (7th Cir. 2006)).  Given the absence of any allegations or evidence that defendants are likely to reduce or terminate benefits under the Old or New plans at any time in the near future, I conclude that no "actual controversy" exists as to the Old Plan or the New Plan.

I also find that plaintiffs Wellers and Combs, who are not participants in the Flex Plan, lack standing under ERISA to challenge defendants' actions with respect to the Flex Plan.  Section 502(a) of ERISA confers standing to sue on "participants" and "beneficiaries" of a plan,

*see* 29 U.S.C. § 1132(a), and with respect to the Flex Plan, Wellers and Combs are neither participants nor beneficiaries. *See Chastain v. AT & T*, 558 F.3d 1177, 1181 (10th Cir. 2009); *Hastings v. Wilson*, 516 F.3d 1055, 1060-61 (8th Cir. 2008).


## II. Timeliness

Defendants also argue that plaintiffs' claims under § 1132(a)(1)(B) are time barred, both under the Flex Plan itself and under ERISA. Although defendants have put forward several dates on which plaintiffs' claims could be found to have accrued, they contend that even the latest of those dates would not save plaintiffs' claims.

ERISA "does not prescribe a limitations period for 29 U.S.C. § 1132 actions ... ." *Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 78 (2d Cir. 2009). The limitations period for such claims generally depends on whether the plan at issue sets forth a limitations period for claims under the plan. In the absence of such a provision, "the applicable limitations period is 'that specified in the most nearly analogous state limitations statute,'" *id.* (quoting *Miles v. New York State Teamsters Conf. Pension & Ret. Fund Employee Pension Benefit Plan*, 698 F.2d 593, 598 (2d Cir. 1983)), which here is New York's six-year limitations period for contract actions, N.Y. C.P.L.R. § 213. *Id.*

However, because New York law permits contracting parties to shorten a limitations period, if the agreement is memorialized in writing, *id.* (citing N.Y. C.P.L.R. § 201), the Second Circuit has given effect to such a provision contained in an ERISA plan. *See id.* (holding that "the three-year limitations period in the Plan controls"). In the case at bar, the Flex Plan has provided, since 1998, that a participant or beneficiary "must bring any action ... for the alleged wrongful denial of plan benefits, or for the alleged intentional interference with any ERISA-protected rights that the participant or beneficiary is or may become entitled to, within one year after the cause of action accrued. This is generally from the time one first knew or should have

known of the alleged wrongful denial or interference, or as otherwise determined by a court of law." Dkt. #11-4 Ex. J at 37-38.

In addition to the question of which limitations period applies, there is the question of when plaintiffs' claims accrued. The Second Circuit has held that "[a] plaintiff's ERISA cause of action accrues ... when there has been a repudiation by the fiduciary which is *clear* and made known to the beneficiaries." *Miles*, 698 F.2d at 598 (internal quotation marks omitted). In the case at bar, defendants contend that such a repudiation occurred as early as 1995, when the Flex Plan was adopted, inasmuch as the summary plan description ("SPD") has from the start stated that Xerox "at its discretion, may at any time terminate or change any of these plans and policies ... ." Dkt. #11-4 Ex. B at 1; Ex. C at introductory page. Those statements, defendants contend, amounted to a clear repudiation of any claim that plaintiffs were guaranteed lifetime health care benefits under the Flex Plan.

Defendants also contend that even if those SPDs did not constitute a clear repudiation of plaintiffs' claims for benefits, such a repudiation occurred at the latest in February 2003, when Xerox issued a "Summary of Material Modifications" ("SMM"), informing participants that, *inter alia*, "[b]eginning in 2003, the calculation of the Benefits Allowance you receive from Xerox ... to apply toward your cost of coverage has changed," that "[t]he amount of the Benefits Allowance ... may be reduced to reflect the benefit the Participant receives or could receive from Medicare," and that "[t]he amount may be adjusted, at the sole discretion of [Xerox], for individual Participants to establish maximum contribution levels for certain plan options." Dkt. #11-8 at 2. The changes were spelled out in more detail later in the SMM. *Id.* at 4. Plaintiffs acknowledge in the complaint that they were made aware of those changes at that time. Dkt. #5 ¶¶ 57, 58.

In response to defendants' arguments, plaintiffs contend, first, that the one-year contractual limitations period is inapplicable, because by its terms it applies only to claims that a participant was wrongfully denied benefits. Plaintiffs argue that such claims are distinguishable

from those presented here, which are not based on a *denial* of benefits, but on a *termination* of benefits.

Second, plaintiffs argue that even if a one-year period applies, this action was timely commenced, because the complaint was filed on September 29, 2009, exactly one year after Xerox announced that it would be terminating certain Flex Plan benefits. *See* Dkt. #11-4 Ex. E. Contrary to defendants' arguments, plaintiffs maintain that the termination announced on September 29, 2008 was not of the same character as the various modifications that had occurred in prior years, but was a new, distinct injury, so that the limitations period did not begin to run until September 29, 2008, at the earliest.

At the outset, I agree with plaintiffs that ERISA's six-year limitations period governs here, not the one-year period. The Flex Plan's one-year period, by its terms, applies to an action "for the alleged wrongful denial of plan benefits ... ." A plan participant could reasonably interpret that statement as applying only to denials of new, individual applications for benefits, and excluding claims based on a reduction or termination of existing benefits, particularly reductions affecting an entire class of retirees.

With respect to the commencement of the limitations period, I also conclude that, to the extent that plaintiffs contend that Xerox promised them free, unaltered or unreduced health care benefits for life, the limitations period began to run no later than February 2003. Assuming *arguendo* that the changes announced in the September 2008 letter were inconsistent with that alleged promise, plaintiffs had been put on notice of Xerox's repudiation or disavowal of such a promise by February 2003, when Xerox announced that plaintiffs' Flex Plan benefits were being reduced.

Plaintiffs themselves seem to recognize that those 2003 changes could prove fatal to their arguments concerning the limitations period. At oral argument in this case, when asked by the Court if it was plaintiffs' contention that, upon retirement, each plaintiff's health care benefits "vested ... and could never change for as long as your client lived," plaintiffs' attorney

- 10 -

responded, "Correct, Your Honor."  Tr. at 29.  He also dismissed the February 2003 changes as mere "minor modifications, wordsmithing ...," and "piecemeal alteration of general plan documents ... ."  Tr. at 21, 22.

That position may be understandable, but it is not tenable.  If plaintiffs were to concede that the February 2003 changes amounted to more than mere "minor modifications," they would be hard pressed to explain how the SMM announcing those changes failed to put them on notice that any belief they may had that their benefits would never be reduced was mistaken.

Certainly the changes in 2003 *did* amount to more than minor, inconsequential adjustments, however.  Regardless of the characterization that plaintiffs seek to give to those changes, the simple fact is that after the changes announced in the February 2003 SMM took effect, at least some participants received a lower level of benefits than they had before. Counsel's assertion that the 2003 changes were no more than "modifying, editing, [or] modernizing plan documents," Tr. at 23, is not supported by the facts alleged here and by the documents in the record, which show that some participants' benefits were *reduced*.  That clearly put the lie to any claim that plaintiffs' benefits were to remain fixed for all time.

To the extent that plaintiffs contend that Xerox promised never to completely eliminate or terminate a particular benefit, or any component of their benefits, the limitations period could be found to have begun in September 2008, but such a claim fails on the merits, as explained below.  But, to the extent that plaintiffs allege that Xerox could not lawfully reduce their benefits, the limitations period on such a claim expired in February 2009, some nine months before plaintiffs filed this action.  Such a claim is, therefore, untimely.

## III. Vesting

As stated, plaintiffs attempt to distinguish between prior changes to the Flex Plan and those announced in September 2008 by arguing that the latter changes, for the first time, meant that some Xerox retirees would no longer receive any health care benefits from Xerox.  *See*

Amended Complaint (Dkt. #5) ¶¶ 60, 61.  Plaintiffs contend that this was therefore materially different from the 2003 changes, which did not terminate any benefits outright.

Although plaintiffs appear to contend that Xerox promised that their benefits would never be changed during their lifetimes, their claims could thus also be read as alleging that Xerox promised never to *terminate* their health care benefits, as opposed to merely reducing them.  Though such a distinction would appear to be a specious one–an employer that made such a promise could simply reduce benefits to almost nil, without literally "terminating" them–the allegations in the complaint do not support a finding that any such promise was ever made, or that any such promise was broken here.

As a general rule, "[u]nlike pension benefits, welfare benefit plans neither vest nor accrue," *Frommert v. Conkright*, 433 F.3d 254, 264 (2d Cir. 2006) (quoting *Owens v. Storehouse, Inc.*, 984 F.2d 394, 398 (11ᵗʰ Cir. 1993)), and "[e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.*, 440 F.3d 571, 576 (2d Cir. 2006) (quoting *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995)).

An employer can, by its own actions, limit its freedom to reduce or terminate benefits, however.  The Second Circuit "ha[s] frequently addressed the question of when an alleged promise of lifetime health or welfare benefits is contractually vested so that the subsequent termination of the benefits gives rise to a denial of benefits claim under ERISA," *Bouboulis v. Transport Workers Union of America*, 442 F.3d 55, 60 (2d Cir. 2006).  The court has held that plaintiffs can establish a claim for vested welfare benefits if they "identify 'specific written language that is reasonably susceptible to interpretation as a promise.'" *Devlin v. Empire Blue Cross and Blue Shield*, 274 F.3d 76, 84 (2d Cir. 2001) (quoting *Joyce v. Curtiss-Wright Corp.*, 171 F.3d 130, 134 (2d Cir. 1999)), *cert. denied*, 537 U.S. 1170 (2003).

In the case at bar, plaintiffs contend that various documents issued by Xerox over the years could reasonably be interpreted as promising them free lifetime health benefits.  Plaintiffs

- 12 -

assert that those documents constitute "specific written language that is reasonably susceptible to interpretation as a promise," under the rule announced in *Devlin*, *supra*. I disagree.

Plaintiffs cite a number of documents in support of that assertion, such as "value added statements," which were sent periodically to plaintiffs to summarize the status of their retirement benefits, and which have in the past contained references to medical benefits for retirees. Plaintiffs also cite a 1984 guidebook issued by Xerox explaining how to file for covered health care expenses, which stated that "[a]s a retiree, you and your spouse ... will participate in the [health plans] for the rest of your lives." Dkt.#18-3 at 2. In addition, plaintiffs have submitted a copy of a 1991 letter to an unnamed employee by then-Benefit Services Retiree Officer Sally Drake, stating that "Xerox is required to provide you with lifetime medical and dental coverage as a condition of the retirement benefits policy." Dkt. #18-6. Plaintiffs contend that, in light of these alleged promises, Xerox could not decrease or eliminate any of their medical benefits once plaintiffs had begun performance by accepting Xerox's offer of employment and lifetime health care coverage.

While the Second Circuit has held that a written promise can cause welfare benefits to vest, the writing in question must constitute a "plan document." *See Bouboulis*, 442 F.3d at 60 ("The standard that we have adopted is whether the *plan documents* contain 'specific written language that is reasonably susceptible to interpretation as a promise' to vest the benefits") (quoting *Devlin*, 274 F.3d at 84) (additional internal quote omitted) (emphasis added).

That does not mean that the documents must literally be contained within the written plan or the SPD. In *Bouboulis*, for example, the court held that a letter from the then-president of the labor union that sponsored the plan at issue, announcing a modification to the terms of the plan, "could potentially be construed as a statutorily required notice of a material modification, and thus sufficiently formal to be considered" by the court as a plan document. *Id.* at 62. In support of that conclusion, the court noted that the letter "was on official stationery and sent to all Plan participants." *Id.* The court contrasted that letter with documents and communications that had

- 13 -

been found in other cases not to modify ERISA plans, such as filmstrips and presentations, individual "Summary of Personal Benefits" booklets and letters sent to retiring employees, and individualized letters accompanying SPDs. *Id.* (citing cases).[3]

Even under that standard, however, many of the documents relied upon by plaintiffs in the case at bar cannot be considered plan documents, particularly with respect to the Flex Plan. The value added statements and guidebooks, for example, are akin to the individualized booklets and letters that the Second Circuit has held do not constitute plan documents. *See id.* (citing *Alday v. Container Corp. of America*, 906 F.2d 660, 665-66 (11th Cir. 1990)). Such individualized statements could not reasonably be interpreted as having modified, or been incorporated into, the Flex Plan.

In addition, at least some of the documents here *predated* the adoption of the Flex Plan in 1995. For instance, the complaint alleges that

> Joseph C. Wilson, one of the early presidents of Xerox, made an affirmative guarantee to all employees that they would be taken care of both as active employees and in retirement from the company. In fact, in a letter distributed to all employees, Wilson vowed, on behalf of Xerox, to relieve Xerox employees from the stresses of retirement, including fear of poverty in old age, or in death, or in ill health.

Dkt. #4 ¶ 40. While plaintiffs do not appear to have submitted a copy of any such "guarantee," defendants have submitted a copy of what appears to be the letter referred to. That letter, which is undated, is on stationery bearing the letterhead of Xerox's predecessor, The Haloid Company, and is addressed from Wilson to "All Haloid People." Dkt. #11-3 Ex. A.[4] In that letter, Wilson states, *inter alia*, that "[o]ver a period *and as we can afford it*, we shall *try* to put into effect ... measures which will relieve you in part of the fears that beset so many these days, fear of

---

[3]The court in *Bouboulis* went on to find it unnecessary to "decide whether the ... Letter was a statutorily required notice or was otherwise sufficiently formal, because even if the ... Letter binds the defendants, it contain[ed] no language that affirmatively operate[d] to create a promise to vest benefits for the Retirees." 442 F.3d at 62.

[4]According to the complaint, The Haloid Company changed its name to Xerox Corporation in 1961. Dkt. #5 ¶ 34.

poverty in old age, or in death, or in ill health, or in slack times." *Id.* (emphasis added).  Thus, this letter contained *no* guarantee of any particular form, level or even existence of health care coverage, but only a vague assurance that the company would "try" to help its employees to the extent that the company could afford to do so.

Likewise, the 1991 letter from Sally Drake, stating that "Xerox is required to provide you with lifetime medical and dental coverage as a condition of the retirement benefits policy" predated, by some four years, the adoption of the Flex Plan.  That letter–which, in any event, dealt only with an apparent inquiry from an employee or retiree concerning a narrow issue regarding coverage for medical services received outside the United States–thus could not have addressed benefits under the Flex Plan, which did not yet exist when the letter was written.[5]

Even if some of the writings relied upon could be considered plan documents, however, they do not support plaintiffs' claims.  The documents could not reasonably have been interpreted as containing any promises, and even if they could be so construed, the facts alleged here do not show that any promises contained in those documents were breached by defendants.

To understand why, it is useful to consider the Second Circuit's decision in *Devlin*, 274 F.3d 76, which is cited here by both sides.  In *Devlin*, pre-1987 SPDs issued by the employer ("Empire") included language indicating that participants' life insurance coverage after retirement would remain at a level equivalent to their annual salaries "for the remainder of their

---

[5]This is not to say that an employer may promise its employees lifetime benefits, and then renege on that promise simply by later enacting an ERISA plan that contains a reservation-of-rights clause or that contradicts that promise.  Although allegations that an employer breached a promise to provide lifetime benefits may support a claim under some other theory, *see, e.g.*, *Devlin*, 274 F.3d at 85-86 (issue of material fact existed as to plaintiffs' claim of promissory estoppel, based on evidence that plaintiffs had been induced to work for employer for many years, in part because of employer's promises of a particular level of life insurance coverage), plaintiffs have not pleaded such a claim in the case at bar, and the Court's discussion here is limited to plaintiffs' claims for benefits under the Flex Plan.  Such a claim cannot logically be based on alleged promises that were made before the Flex Plan came into existence.  *Cf. id.* at 84-85 (where one SPD promised lifetime benefits, but a later SPD concerning the same plan contained a reservation of rights clause, only the earlier SPD was relevant to plaintiffs' claims for benefits under that plan).

- 15 -

lives." *Id.* at 82.  In 1987, however, Empire issued an SPD that, for the first time, contained

reservation-of-rights language, and in 1997, Empire announced a reduction in life insurance

coverage to a flat $7500.  *Id.* at 80, 81.

After the district court granted summary judgment for the employer, the Second Circuit

reversed and remanded.  The court held that a sentence within the pre-1987 SPDs that "retired

employees, after completion of twenty years of full-time permanent service and at least age 55

will be insured," could "be reasonably read as promising such insurance so long as employees

retire after age 55 and have provided full-time permanent service to Empire for at least twenty

years."  The court further held that a second statement contained in the pre-1987 SPDs which

provided that life insurance benefits "will remain at [the annual salary level] for the remainder of

[participants'] lives" was "sufficient to create a triable issue of fact as to whether Empire

promised to vest retiree life insurance benefits at the stated level." *Id.* at 85.

In the case at bar, no similar assurances were ever given.  Plan participants were

informed from time to time that they would *participate* in Xerox's health plans for the rest of

their lives, and that Xerox would provide coverage under those plans, *but they were not*

*promised any particular level of coverage, nor did Xerox promise never to reduce benefits*.  In

fact, from its inception in 1995, the Flex Plan has included a reservation-of-rights clause in its

SPDs and SMMs, advising participants that Xerox could "terminate or change" the plan at any

time, at its discretion.  *See* Dkt. #11-5 at 22; #11-6 at 3, 26, 28, 32.  *See Robinson v. Sheet Metal*

*Workers' Nat. Pension Fund, Plan A*, 515 F.3d 93, 99 (2d Cir.) ("lifetime" language in plan

documents was "merely a factually correct statement of the benefits then provided by the

Plan–benefits that were expressly subject to amendment 'at any time,'" and therefore did not

give plaintiffs a contractual and absolute right to continue receiving the benefits in question for

the rest of their lives), *cert. denied*, ___ U.S. ___, 129 S.Ct. 248 (2008); *Abbruscato v. Empire*

*Blue Cross and Blue Shield*, 274 F.3d 90, 99 (2d Cir. 2001) ("Here ... we have SPD language that

*both* appears to promise lifetime life insurance coverage at a particular level *and* clearly reserves

Empire's right to amend or terminate such coverage.  Because the same document that potentially provided the 'lifetime' benefits also clearly informed employees that these benefits were subject to modification, we conclude that the language contained in the 1987 SPD is not susceptible to an interpretation that promises vested lifetime life insurance benefits"), *cert. denied*, 537 U.S. 1170 (2003).  *Cf. Adams v. Freedom Forge Corp.*, 204 F.3d 475 (3d Cir. 2000) (affirming entry of a preliminary injunction in favor of two ERISA plaintiffs, based on their claim for breach of fiduciary duty arising from their employer's switching from self-insured health benefits plan with no premiums to managed care system which would require plaintiffs to pay monthly premiums, where employer, which had allegedly induced plaintiffs to take early retirement, had previously distributed plan documents promising "lifetime" benefits without any reference to a reservation of rights).[6]

In short, the alleged promises here never bound Xerox to provide the benefits to which plaintiffs now claim entitlement.  To the contrary, Xerox has consistently disavowed any intent to guarantee lifetime coverage, and the documents relied on by plaintiffs could not reasonably be interpreted otherwise.  Plaintiffs' claims for such benefits must therefore be dismissed.

## IV. Breach of Fiduciary Duty

Plaintiffs allege that "[t]he defendants have determined to reduce and/or eliminate benefits due to Members in violation of their fiduciary duties as set forth in ERISA."  Dkt. #5 ¶ 79.  Plaintiffs therefore ask the Court to issue an order nullifying any plan amendments reducing or eliminating plaintiffs' benefits, and requiring defendants to reform the Plan to remove such amendments.  *Id.* ¶ 84.

---

[6]In addition, the 2003 Flex Plan Restatement provides at § 2.02 that "a credit toward the cost of Medical Care Benefits ... *may be provided* by the Company in its *sole discretion* for Participants," Dkt. #11-5 at 9, and at § 2.19 that "[a] credit toward the cost of Medical Care Benefits *may be provided* by the Company in its *sole discretion* for a Participant who elects No Coverage under the Plan."  Dkt. #11-5 at 11 (emphases added).

Defendants contend that to the extent that this claim is premised on 29 U.S.C. § 1132(a)(2),[7] it fails because plaintiffs are not suing on behalf of the plans. According to defendants, plaintiffs do not allege any loss or other harm to the plans themselves, but only seek benefits for themselves.

Defendants further argue that plaintiffs' claim under § 1132(a)(3)[8] must be dismissed because what plaintiffs ultimately seek is monetary relief, which is unavailable under that statute. Defendants contend that the relief plaintiffs seek is appropriately sought under § 1132(a)(1)(B) (although defendants also contend that plaintiffs' § 1132(a)(1)(B) claim must be dismissed for other reasons, as explained above). *See Frommert*, 433 F.3d at 270 (finding that because the relief that the plaintiffs sought, recalculation of their benefits consistent with the terms of the plan, "falls comfortably within the scope of § 502(a)(1)(B), ... there is no need on the facts of this case to also allow equitable relief under § 502(a)(3)").

Defendants also argue that the claim for breach of fiduciary duty is time barred. The limitations period on such a claim is six years from the date of the breach or three years from the date of actual knowledge of the breach. 29 U.S.C. § 1113(2). Defendants contend that plaintiffs have pleaded actual knowledge of the breach in 2003, when "Xerox reconfigured its benefits package for retirees age 65 and older," in a way that effectively reduced their coverage. Amended Complaint (Dkt. #5) ¶¶ 57, 58.

---

[7]Section 1132(a)(2) permits a civil action "by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title ... ." Section 1109 provides that a fiduciary who breaches his duties "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

[8]Section 1132(a)(3) permits an action "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan ... ."

In response, plaintiffs contend that they have stated valid claims on behalf of the plans themselves.  Plaintiffs assert that "as a result of defendants' actions, the retirees have, and will continue to, abandon the Plans," and that plan assets will diminish as a result.  Plaintiffs' Mem. at 26.

Plaintiffs also contend that their claim for breach of fiduciary duty does not seek damages, but equitable relief, specifically an order reforming the plans to remove all amendments that have operated to reduce or terminate any benefits.

In support of this claim, plaintiffs rely on the Supreme Court's decision in *LaRue v. DeWolff, Boberg & Associates, Inc.*, 552 U.S. 248 (2008).  In *LaRue*, the Court held that "although § 502(a)(2) [which 'provides for suits to enforce the liability-creating provisions of § 409, concerning breaches of fiduciary duties that harm plans,' *id.* at 250] does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." *Id.* at 256.

As that quote indicates, however, the holding in *LaRue* was limited to claims that a fiduciary's misconduct impaired the value of the participant's individual account.  Such claims can arise only in the context of a "defined contribution" plan, which "promises the participant the value of an individual account at retirement, which is largely a function of the amounts contributed to that account and the investment performance of those contributions."  *Id.* at 250 n.1.

In the case at bar, there is no indication in the complaint that the plans at issue are defined contribution plans, and in fact the plan documents indicate that they are not.  The plan documents contain no suggestion that participants would have any individual accounts, and plaintiffs make no allegations in that regard.[9]  Thus, *LaRue* has no application to the case at bar.

---

[9]In their memorandum of law, plaintiffs state that "it is undisputed that the Plans are

(continued...)

*See id.* at 255-56 ("The 'entire plan' language in [*Massachusetts Mutual Life Insurance Company v. Russell*, 473 U.S. 134 (1985), which held that the only remedies available under § 409 are those that inure to the benefit of the plan as a whole] speaks to the impact of § 409 on plans that pay defined benefits. ...  Consequently, our references to the 'entire plan' in *Russell*, which accurately reflect the operation of § 409 in the defined benefit context, are beside the point in the defined contribution context").  *See also Nichols v. Alcatel, USA, Inc.*, 532 F.3d 364 (5th Cir. 2008) (holding that plaintiff retirees' "§ 502(a)(2) claim is unlikely to succeed because the Retirees have offered no evidence that Plan B sustained losses; indeed, it would be impossible for them to do so since, as explained above, Plan B is an unfunded Plan").

Plaintiffs also assert in their brief that the plans at issue "are reliant upon the size and composition of the retiree participants in order to form a risk pool for the purpose of establishing premium rates," and that "[p]laintiffs believe, and expect to establish through discovery, that the defendants' actions have caused the plaintiffs' risk pool to be eroded, resulting in excessive premiums charged ... to Xerox's retirees."  Dkt. #17 at 26.  Plaintiffs have alleged no facts to support that allegation in the complaint, however, and this utterly conclusory allegation in their memorandum of law is insufficient to save this facially invalid claim, whether premised on § 1132(a)(2) or § 1132(a)(3).

Although plaintiffs purport, then, to bring claims on behalf of the plans, at bottom they seek only benefits under the Flex Plan.  Plaintiffs contend that they are seeking equitable relief in the form of an order directing defendants to "reform the plans to remove all amendments that have functioned to reduce or terminate any benefits ...," Dkt. #5 ¶ 84, but the effect of such relief

---

[9](...continued)
unfunded," Dkt. #17 at 24, which means that "benefits thereunder will be paid solely from the general assets of the employer."  *Demery v. Extebank Deferred Compensation Plan (B)*, 216 F.3d 283, 287 (2d Cir. 2000) (quoting *Gallione v. Flaherty*, 70 F.3d 724, 725 (2d Cir. 1995)). While the Court's decision in this case is not dependent on plaintiff's statement, which is outside the pleadings, it serves to demonstrate that plaintiffs make no claim here that the plans at issue are defined contribution plans.

would simply be to restore certain benefits to Flex Plan participants. Plaintiffs cannot avoid the bar against pursuing individual claims under § 1132(a)(2), or against obtaining monetary relief under § 1132(a)(3), merely by casting this claim in equitable terms, or alleging some vague, speculative injury to the plans. *See Phelan v. Wyoming Associated Builders*, 574 F.3d 1250, 1254 (10th Cir. 2009) ("the Supreme Court has warned us about legal remedies in equitable clothing") (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002)); *Providence Health Plan v. McDowell*, 385 F.3d 1168, 1174 (9th Cir. 2004) ("Providence's claim for monetary damages ... is a claim for a legal remedy, despite Providence's attempt to disguise its claim in equitable clothes"), *cert. denied*, 544 U.S. 961 (2005); *Crosby v. Bowater Inc. Retirement Plan for Salaried Employees of Great Northern Paper Inc.*, 382 F.3d 587, 594 (6th Cir. 2004) ("'equitable relief' refers to 'those categories of relief that were typically available in equity (such as injunction, mandamus, and restitution, but not compensatory damages'") (quoting *Mertens v. Hewitt Associates*, 508 U.S. 248, 256 (1993)), *cert. denied*, 544 U.S. 976 (2005); *Krauss v. Oxford Health Plans, Inc.*, 418 F.Supp.2d 416, 433 (S.D.N.Y. 2005) ("plaintiffs may not restate claims for unpaid benefits and statutory damages as claims in equity under § 1132(a)(3)"), *aff'd*, 517 F.3d 614 (2d Cir. 2008).[10]

Plaintiffs also argue that at the pleading stage, they are permitted to seek, in the alternative, both benefits under § 1132(a)(1)(B) and injunctive relief under § 1132(a)(3), and that it would be premature to dismiss the later claim as duplicative at this time. In fact, however, the general rule is that "[i]f ... a plaintiff can pursue a claim for benefits under Section 1132(a)(1)(B), he cannot also seek equitable relief on a breach-of-fiduciary-duty claim under 1132(a)(3), even in the alternative." *Giordano v. Coca-Cola Enterprises Inc.*, No. CV 08-0391,

---

[10]Plaintiffs also refer in their brief to "[t]he termination of the Flex Plan and imminent termination of the Old and New Plans," which they contend will diminish plan assets payable to plan participants. Dkt. #17 at 26. While I do not suggest that defendants *would* be barred from terminating any of the plans (in fact, as pointed out above, the SPDs have warned participants that Xerox reserved the right to do so), there is no indication in the complaint that any of the plans have been or are about to be terminated entirely.

2011 WL 839507, at *8 (E.D.N.Y. Mar. 7, 2011) (citing *Moore v. Fox Chevrolet, Oldsmobile,*

*Cadillac, Inc.*, No. 5:06-CV-42, 2007 WL 925721, at *6 (N.D.N.Y Mar. 26, 2007)). *See also*

*Cheal v. Life Ins. Co. of North America*, 330 F.Supp.2d 1347, 1355 (N.D.Ga. 2004) ("An ERISA

plaintiff who has an adequate remedy under § 502(a)(1)(B) cannot alternatively plead and

proceed under § 502(a)(3)") (citing *Katz v. Comprehensive Plan of Group Ins.*, 197 F.3d 1084,

1089 (11th Cir. 1999)); *Jurgovan v. ITI Enterprises*, No. 03 C 4627, 2004 WL 1427115, at *4

(N.D.Ill. June 23, 2004) ("the fact that alternative pleading is proper under the Federal Rules is

irrelevant ... because the existence of a claim for relief under § 502(a)(1)(B) (as opposed to the

receipt of actual relief under than section) means that relief under § 502(a)(3) is not available as

a matter of law"). Plaintiffs' claim under § 1132(a)(3) must therefore be dismissed.[11]


**V. Xerox and Nazemetz as Defendants**

  Defendants contend that neither Xerox nor Nazemetz is a proper defendant with respect

to plaintiffs' claims under § 1132(a)(1)(B). Although my decision dismissing the complaint

renders it unnecessary for the Court to address this issue, I briefly address it here.

  Xerox is plaintiffs' former employer, and the sponsor of the plans at issue. Nazemetz is

named in the complaint as "a past administrator of the Plans, and in her current capacity as Vice

President and the Chief Human Resources and Ethics Officer of Xerox Corporation." Dkt. #5 ¶

24.

  "In a recovery of benefits claim, only the plan and the administrators and trustees of the

plan in their capacity as such may be held liable." *Paneccasio v. Unisource Worldwide, Inc.*,

---

[11]While my decision renders it unnecessary for the Court to address defendants' assertion
that plaintiffs' fiduciary duty claims are time barred, I agree that, at least to the extent that
plaintiffs allege that defendants breached some fiduciary duty by failing to inform them that the
plans were subject to amendment or termination, or that their benefits were subject to reduction
or change, plaintiffs were made aware of those facts no later than February 2003–more than six
years before this lawsuit was filed–when Xerox issued the SMM announcing a reduction of
certain benefits under the Flex Plan.

532 F.3d 101, 108 n.2 (2d Cir. 2008) (quoting *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 509-10 (2d Cir. 2002)) (additional internal quote omitted). *Accord Crocco v. Xerox Corp.*, 137 F.3d 105, 107 (2d Cir. 1998). *See also Moore v. Fox Chevrolet, Oldsmobile, Cadillac, Inc.*, No. 5:06-CV-42, 2007 WL 925721, at *2 (N.D.N.Y. Mar. 26, 2007) ("Employer liability under § 1132(a)(1)(B) is precluded when the employer has named another entity as the plan administrator in the plan document").

Plaintiffs' brief addresses this issue only in terms of their claims for breach of fiduciary duty, and they do not appear to argue that Xerox or Nazemetz are proper defendants on their claims under § 1132(a)(1)(B). I agree with defendants that neither Xerox nor Nazemetz can be held liable here under § 1132(a)(1)(B), and that claim–which has already been dismissed on the merits–is subject to dismissal as to Xerox on Nazemetz on that ground as well. *See Hall v. Lhaco, Inc.*, 140 F.3d 1190, 1196 (8th Cir. 1998) ("Hall's claim pursuant to § 502(a)(1)(B) simply is not redressable against LHACO [the former plan administrator], because LHACO no longer provides any administrative services to Hall's ERISA Plan"); *Boyce-Idlett v. Verizon Corporate Services Corp.*, No. 06CIV.975, 2007 WL 2589445, at *11 (S.D.N.Y. Aug. 30, 2007 (stating that it would be futile to permit plaintiff to amend the complaint to assert a § 1132(a)(1)(B) claim against her employer, since employer had designated a third party to administer plan).

Nor can Xerox or Nazemetz be held liable under § 1132(a)(3), on the facts alleged here. Despite plaintiffs' conclusory arguments that Xerox is a plan fiduciary, there are no facts alleged in the complaint to support that assertion. Xerox's status as the plan sponsor does not render it a fiduciary with respect to the plans, and to the extent that Xerox made decisions concerning the terms of the plans, it acted as a settlor, not as a fiduciary. *See Beck v. PACE Int'l Union*, 551 U.S. 96, 101-02 (2007) (stating that "[i]t is well established in this Court's cases that an employer's decision whether to terminate an ERISA plan is a settlor function immune from ERISA's fiduciary obligations," and that "decision[s] regarding the form or structure of a plan

are generally settlor functions") (emphasis and internal quote omitted); *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443 (1999) ("Plan sponsors who alter the terms of a plan do not fall into the category of fiduciaries") (quoting *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996)); *In re Bank of America Corp. Securities, Derivative, and ERISA Litigation*, ___ F.Supp.2d ___, 2010 WL 3448197, at *13 (S.D.N.Y. Aug. 27, 2010) ("the Complaint, viewed most favorably, does not plausibly allege facts to support the conclusory allegation that BofA, as employer, exercised authority and control over plan fiduciaries such that it qualifies as a *de facto* fiduciary under ERISA"); *Moore*, 2007 WL 925721, at *2 ("an employer cannot be held liable as a *de facto* administrator") (citing *Crocco*, 137 F.3d at 108).

As stated, the complaint alleges that Nazemetz is sued "as a past administrator of the Plans, and in her current capacity" as a Xerox Vice President. Dkt. #5 ¶ 5. There is no indication, however, that Nazemetz was the administrator at the time of any of the decisions concerning the benefits allowance, which gave rise to the claims in this action. In fact, plan documents going back at least as far as 2002–several years before those decisions were made–show that Becker was the plan administrator by that time, a post he continues to hold today. *See* Dkt. #11-5 at 15, § 9.01.

Nazemetz has signed some plan and plan-related documents, but the documents themselves indicate that she did so in her capacity as Vice President and Chief Human Resources and Ethics Officer. For example, Nazemetz signed the September 2008 letter informing employees of the upcoming changes to the Flex Plan, but the letterhead bears her titles recited above. Dkt. #11-7 at 2. Although Nazemetz communicated those changes to plaintiffs, there are no facts alleged here suggesting that she was responsible for those decisions, or that she had any fiduciary responsibilities toward the plans or plan participants at that time. *See Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 20 (1ˢᵗ Cir. 1998) (stating that plan documents "strip any veneer of plausibility from the plaintiffs' bald assertion that the Bank is a fiduciary"). *See also Bell v. Pfizer, Inc.*, 626 F.3d 66, 73-74 (2d Cir. 2010) (outlining functions of a fiduciary and

stating that "a person has fiduciary status only to the extent that he has or exercises the described authority or responsibility") (internal alterations and quotation marks omitted).

The general rule is that "a fiduciary is not liable for a breach committed before he became a fiduciary or after he ceases to be a fiduciary ... ." *Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Group Ltd.*, No. 05-60080, 2008 WL 926509, at *10 (S.D.Fla. Mar. 31, 2008). *See also In re Polaroid Litigation*, 362 F.Supp.2d 461, 476 (S.D.N.Y. 2005) ("a fiduciary cannot be liable for any breach of fiduciary duty that does not occur on his watch") (citing 29 U.S.C. § 1109(b)). Since the alleged breach of fiduciary duty here consists of the "determin[ation] to reduce and/or eliminate benefits due to Members in violation of their fiduciary duties as set forth under ERISA," *see* Complaint ¶ 79, which did not occur until years after Nazemetz ceased acting as plan administrator, there is no basis here for a claim against her under § 1132(a)(3).[12]


## VI. Leave to Amend

At the end of their memorandum of law, plaintiffs state that "in the event that this Court deems any one or all of the claims in the Complaint to be deficient, plaintiffs respectfully request leave from the Court to amend the Complaint and correct any deficiencies." Dkt. #17 at 29.

Although "[l]eave to amend a complaint shall be freely given when justice so requires," Fed. R. Civ. P. 15(a)(2), such broad, open-ended, contingent requests are not looked upon with favor. *See*, *e.g.*, *PR Diamonds, Inc. v. Chandler,* 364 F.3d 671, 699 (6th Cir. 2004) (noting "[t]his Court's disfavor of such a bare request in lieu of a properly filed motion for leave to amend"). *See also Fisher v. Kadant, Inc.*, 589 F.3d 505, 509-10 (1st Cir. 2009) (cautioning against "allowing plaintiffs to hedge their bets by adding a cursory contingent request in an opposition

---

[12]To the extent that plaintiffs may allege that Nazemetz breached her fiduciary duty while she was plan administrator by failing to inform plaintiffs that the plans were subject to amendment or termination, such a claim fails on the merits, because, as explained above, the SPDs have consistently contained such information.

to a motion to dismiss"); *Ricotta v. Finance America, LLC*, No. 06-cv-01502, 2007 WL 987854, at *5 n.7 (D.Colo. Apr. 2, 2007) ("a perfunctory request for an opportunity to cure unspecified pleading defects in a response brief does not typically constitute a sufficiently specific request for leave to amend") (citing *Calderon v. Kansas Dep't of Social and Rehab. Svcs* ., 181 F.3d 1180,1185-86 (10th Cir. 1999)).

Plaintiffs have not identified any part of their pleadings that they seek to amend, or explained how they propose to amend it.  In the absence of a motion for leave to amend, properly made under Rule 15(a), plaintiffs' request is denied. *See Gray v. Evercore Restructuring L.L.C.*, 544 F.3d 320, 327 (1st Cir. 2008) (plaintiff's statement in his opposition to motion to dismiss, that "in the event that the Court finds that the Amended Complaint fails to state a claim, Plaintiff requests leave to replead," "d[id] not constitute a motion to amend a complaint," and district court therefore had no obligation to perform a Rule 15(a) analysis).

## CONCLUSION

Defendants' motion to dismiss the complaint (Dkt. #11) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      April 6, 2011.